529 So.2d 345 (1988)
Jimmie Lee WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. BS-312.
District Court of Appeal of Florida, First District.
August 8, 1988.
Michael E. Allen, Public Defender, and Phil Patterson, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Jimmie Lee Williams was convicted following a jury trial of possession of drug paraphernalia contrary to section 893.147(1), Fla. Stat. (1985).[1] On appeal, Williams contends that the trial court erred *346 in denying his motion for judgment of acquittal because the evidence, being wholly circumstantial, was insufficient as a matter of law to support his conviction. We agree and reverse.
Williams was charged with possession of cocaine with intent to sell and possession of drug paraphernalia. At trial, the state presented testimony of Glenn Crosby, an apartment complex maintenance man, that on August 1, 1986, he entered an apartment leased to Williams and saw a pistol, white powder, razor blades, and other items he recognized to be illegal. Neither Williams nor anyone else was in the apartment at that time. Crosby's observations were reported to the police, and they instructed him to try to locate Williams or Williams's car on the premises of the apartment complex. About 5:00 p.m. that afternoon, Crosby saw Williams's car parked in front of the apartment. The apartment door was open, but Crosby could not see inside and did not see Williams. Crosby reported this sighting to the police.
Detective Ron Fry, as a result of Crosby's call, obtained a search warrant and searched Williams's apartment on August 1, 1986 around 9:00 p.m. He found beer cans that had been fashioned into smoking devices in a trash can; six plastic baggies, some containing traces of cocaine, scattered around the apartment; a "crack" cocaine pipe in the drawer of a nightstand in the bedroom; and a triple-beam scale in the chest of drawers in the bedroom. When questioned about fingerprints on any of these items, Fry responded that the plastic bags had been tested but he had not read the report and that the beer cans had not been tested.
The state presented testimony of the apartment manager that the apartment was leased to Williams and that he had been served with an eviction notice.
Exhibits received in evidence included a lease agreement signed by Williams and Caledonia Jackson; a rental application that listed Williams, Caledonia Jackson and Gerald Jackson as occupants of the apartment; and an affidavit of service showing that on July 15, 1986, Caledonia Jackson had accepted service of process of an eviction notice directed to Williams.
The state rested its case, and the defendant's motion for judgment of acquittal was denied.
Williams testified in his defense that he did not own and had no knowledge of the cocaine or any of the items of alleged paraphernalia except the triple-beam scale. He stated he had been living in the apartment for several months with his girlfriend, Caledonia, and her 19 year old son, Gerald, and that during June and July of 1986, a Nigerian man named Paul Enzowanza also lived in the apartment. Williams testified that on July 7, 1986, he received an eviction notice for failure to pay rent that allowed him seven days to move out of the apartment. After receiving the notice, he began moving his possessions to his mother's house and began helping his girlfriend move in with her sister; he also advised Enzowanza to leave because they were being evicted. He stated that he moved out of the apartment on July 16 or 17, 1986, and had not returned to the apartment complex after July 18. As of August 1, 1986, he had not returned his apartment key to management because he had permission to leave his furniture in the apartment until he found another place to live. He did not know whether Caledonia had returned her key and stated that Gerald had access to a key. Williams further testified that he spent the afternoon and evening of August 1 with Caledonia at her sister's house.
Williams's mother and sister testified that Williams had moved into his mother's house on July 7 or 8, 1986. Both women testified that they had seen Caledonia drive Williams's car on several occasions, and Williams's sister testified that she had seen Caledonia drive Williams's car even after he moved in with his mother. Williams's mother stated that Williams was not home on August 1 at 5:00 p.m.
Williams refused to implicate Caledonia or Gerald Jackson, Paul Enzowanza, or anyone else as the possible owner of the cocaine bags and drug paraphernalia. He *347 stated that a friend asked him to keep the triple-beam scale about two years before, and that he did not know how to use the scale or what it was used for. Regarding the remaining items, he simply stated that he did not know where they came from and therefore could not connect them to anyone.
In rebuttal, the state recalled the apartment manager and she testified that she was not aware of any permission for Williams to keep his furniture in the apartment until his living situation improved, but that Williams and Caledonia Jackson were still technically the lessees of the apartment until August 4, 1986, when the eviction process was complete.
At the close of all evidence, the trial court again denied Williams's motion for judgment of acquittal and submitted the case to the jury, who returned a verdict of not guilty of possession of cocaine with intent to sell and the lesser included offense of simple possession of cocaine, but guilty of possession of drug paraphernalia.
The state's case against Williams was wholly circumstantial and relied on a theory of constructive possession to support conviction. However, the evidence was insufficient as a matter of law to establish constructive possession because the apartment in which the items were found was not in Williams's exclusive possession. To establish constructive possession of contraband, the state must show that the accused (1) had dominion and control over the contraband, (2) knew of the presence of the contraband, and (3) knew of the illicit nature of the contraband. Brown v. State, 428 So.2d 250, 252 (Fla. 1983); cert. denied, Brown v. Florida, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983). If the premises where contraband is found is in joint, rather than exclusive, possession of the accused, knowledge of the presence of the contraband and the ability to control it will not be inferred from the ownership or possession but must be established by independent proof. Id. Such proof may consist either of evidence establishing that the accused had actual knowledge of the presence of the contraband or evidence of incriminating statements and circumstances from which a jury might lawfully infer the accused's actual knowledge of the presence of contraband. Frank v. State, 199 So.2d 117, 121 (Fla. 1st DCA 1967).
Since the evidence showed, at the very least, that Caledonia and her teen-age son Gerald had access to and use of the apartment, the state cannot rely on constructive possession to establish criminal knowledge on the part of Williams. The state failed to prove Williams had actual knowledge of the presence of the contraband by independent proof. It presented no evidence that Williams's fingerprints were found on any of the items and no testimony that Williams was seen with the items or even near the apartment at the time the items were found. The maintenance man's testimony that Williams's car was seen in front of the apartment on the day of the search, without more, is insufficient to constitute independent proof that Williams was in the apartment at the time and thus had knowledge of the contraband.
Although Williams did admit having knowledge of the presence of the triple-beam scale, the state failed to prove that the scale was "drug paraphernalia" within the meaning of the statutory definition. Section 893.145(5), Fla. Stat. (1985), states that "drug paraphernalia" includes "[s]cales and balances used, intended for use, or designed for use in weighing or measuring controlled substances." The state presented no evidence that Williams used or intended to use the scale for an illicit purpose. In fact, no trace of cocaine or any other illegal substance was found on the scale, nor did the state prove that the scale was "designed for use in weighing or measuring controlled substances." This "designed for use" facet of the statute, absent evidence showing use or intended use in weighing controlled substances, requires not only proof that the scales could be so used, but also that by reason of some peculiar characteristic of design the scale could *348 be recognized as being intended only for such use. Otherwise, any type of household or business scale useful for a wholly innocent purpose but also suitable for weighing controlled drugs could be held to constitute drug paraphernalia irrespective of proof that such illicit use was intended. Detective Fry's testimony that scales of the type seized are commonly used to weigh controlled substances is, standing alone, insufficient to prove that the scale was "designed for use in weighing or measuring controlled substances" as required by the statute.
The state failed to prove that Williams violated section 893.147(1), making it unlawful to use, or possess with intent to use, drug paraphernalia. In M.W.W. v. State, 389 So.2d 1240 (Fla. 1st DCA 1980); dismissed, State v. M.W.W., 394 So.2d 1153 (Fla. 1981), a case quite similar to this, the court held:
The State has failed to establish, either directly or indirectly, that the appellant had any knowledge of the cannabis. The State's evidence is entirely circumstantial, and thus, no matter how strongly such evidence may suggest guilt, the conviction cannot be sustained unless the evidence excludes every reasonable hypothesis of innocence. See McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977). In this instance, the evidence does not exclude the "possibility of possession and scienter by others." Thompson, 375 So.2d at 636.[2] Specifically, there is a reasonable doubt as to whether the appellant's brother placed the cannabis in the end table drawer without the appellant's knowledge. When the evidence presented in a case fails to exclude such a reasonable doubt, that evidence is legally insufficient to present a jury issue on the appellant's knowledge of the presence of drugs. Therefore, the motion for a judgment of acquittal should have been granted. See Willis v. State, 320 So.2d 823, 825 (Fla. 4th DCA 1975). See also McArthur v. Nourse, 369 So.2d 578, 580-81 (Fla. 1979).
Id. at 1242, 1243.
The evidence in the instant case was entirely circumstantial and failed to exclude every reasonable hypothesis of innocence. Aside from the fact that the state did not prove that the scale was "paraphernalia," the evidence failed to prove Williams's knowledge of the presence of the contraband items. That Williams did not have exclusive possession of the apartment was indisputed since both Caledonia and her son used it, not to mention the third person, Paul Enzowanza, who Williams testified also stayed there. The trial court erred in not granting the motion for judgment of acquittal. M.W.W. v. State, 389 So.2d at 1243; Torres v. State, 520 So.2d 78 (Fla. 3d DCA 1988). See also, Smith v. State, 519 So.2d 750 (Fla. 4th DCA 1988).
REVERSED.
WIGGINTON, J., concurs.
BOOTH, J., concurs specially with written opinion.
BOOTH, Judge, specially concurring.
I concur with the majority that the conviction must be reversed because the State failed to establish that appellant was in constructive possession of the items found in his apartment or that the triple beam balance scale appellant admitted owning fell within the purview of Sections 893.145 and 893.147, Florida Statutes. However, I do not subscribe to the majority's discussion of the general circumstantial evidence rule insofar as it implies that the State must present evidence which excludes "every" reasonable hypothesis of innocence. Similar terminology in the cases cited[1] is limited by reference to the defendant's theories or hypotheses of innocence. These are the reasonable hypotheses of innocence that the State must exclude. Broughton v. State, 528 So.2d 1241 (Fla. 1st DCA 1988); Stemm v. State, 523 So.2d 760 (Fla. 1st DCA 1988). In the instant case, the specific rules governing proof of constructive *349 possession control,[2] as held in Stemm, supra at pages 761-762:
Since the State did not rebut appellant's reasonable hypothesis of innocence, appellant urges that this Court must reverse and direct that he be discharged, citing Fowler v. State, 492 So.2d 1344 (Fla. 1st DCA 1986).
We agree that the State's case wholly failed to establish an inference clearly inconsistent with appellant's hypothesis of innocence... . In the instant case, nothing in the State's case in chief was inconsistent with appellant's argument that he had no knowledge of the cigarette's presence. Significant is the fact that the pack had been circulated among other inmates and had been out of appellant's exclusive control for a period of time.
Similarly, in the instant case the conviction must be reversed.
NOTES
[1] Section 893.147(1) makes it "unlawful for any person to use or possess with intent to use, drug paraphernalia ..."
[2] Thompson v. State, 375 So.2d 633 (Fla. 4th DCA 1965).
[1] McArthur v. State, 351 So.2d 972, 976 and notes 12 and 13 (Fla. 1977); M.W.W. v. State, 389 So.2d 1240 (Fla. 1st DCA 1980).
[2] See, e.g., Williams v. State, 489 So.2d 1198 (Fla. 1st DCA 1984).